**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

---

| | | |
|---|---|---|
| WILLIAM RICHARDSON, | * | |
| INDIVIDUALLY AND ON BEHALF OF | * | |
| SEANESEE RICHARDSON AS HIS LEGAL | * | |
| GUARDIAN AND PARENT, and SEANESEE | * | CIVIL ACTION NO.: |
| RICHARDSON, | * | 7:19-CV-0015-HL |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | |
| | * | |
| FIAT CHRYSLER AUTOMOBILES (FCA) US, | * | |
| LLC, DAIMLERCHRYSLER AG, | * | |
| CHRYSLER, LLC, CHRYSLER GROUP, LLC, | * | |
| KIMBERLY RICHARDSON, and JOHN DOE, | * | |
| | * | |
| Defendants. | * | |

---

**DEFENDANT FCA US LLC'S RESPONSE TO PLAINTIFFS' MOTION
TO EXCLUDE THE TESTIMONY OF DR. NATHAN DORRIS**

Plaintiffs' Motion to Exclude the Testimony of Dr. Nathan Dorris seeks to bar him from providing three separate opinions in this case. Although Plaintiffs do not challenge Dr. Dorris' qualifications in the field of human factors, their Motion calls into question his education, experience, and training. But Dr. Dorris is imminently qualified in the field of human factors and has a wealth of education, experience, and training which allow him to provide expert opinions on the warnings and instructions provided by FCA with the subject Grand Caravan:

1. Dr. Dorris holds a Ph.D. in Industrial and Systems Engineering from Auburn University, with a specialization in Human Factors Engineering. (Dorris Report, p. 1).

2. Dr. Dorris has been certified by the Board of Certification in Professional Ergonomics and he serves on the Executive Committee of the Z535 committee, which address warnings and safety messages, for the American National Standards Institute (ANSI), the foremost

1

organization in the United States organization overseeing the development of voluntary consensus standards for products, services, processes, systems, and personnel.  (Id.).

3.  Dr. Doris is presently an Affiliate Professor at Auburn University, where he has taught graduate-level courses in Human Factors Engineering.

4.  He is a member of SAE International (formerly known as the Society of Automotive Engineers) and has presented research to various SAE groups and meetings.  (Id.).

5.  Dr. Dorris has given numerous presentations and authored various articles, technical reports, and a book chapter on the design of warnings and behavioral responses to safety messages.  His publications include peer-reviewed articles concerning automotive warnings for both SAE and the Human Factors and Ergonomics Society (HFES) (see Dorris & Dorris 2001a; 2001b; Dorris & Burke 2011).  (Id.).

6.  Dr. Dorris regularly consults *outside* of litigation about warnings and when to provide explicit safety messages for a wide range of products and equipment.  (Id.).  Dr. Dorris has also served as a consultant to various automotive industry participants, including automobile manufacturers, automobile component part manufacturers, and passenger car and truck tire manufacturers.  He has performed litigation and non-litigation consulting work in the automotive industry.  Non-litigation consulting has included reviewing, writing, and advising about safety messages within vehicle owner's manuals for various different makes and models of automobiles sold in the United States.

In this matter, Dr. Dorris' investigation followed the same valid, reliable method that is generally accepted within the human factors field and is employed by other consultants, researchers and safety professionals, including in research and investigations conducted by the National Highway Traffic Safety Administration (NHTSA) and others.  This commonly

recognized and widely-used methodology uses accepted human factors practices, principles, guidelines, and knowledge, including available research and published studies, as a basis for assessing the adequacy of existing safety information as well as the likely impacts of proposed alternatives, as suggested by plaintiff's experts in this matter.

Dr. Dorris' testimony will assist the jury, as it is unlikely that they will be familiar with the available scientific literature, standards, guidance, and experience related to developing and evaluating warnings and safety messages.  Further his testimony would be helpful to a jury in deciding warnings issues in this matter because his opinions are the result of an accepted and valid methodology, which relies upon peer-reviewed and published research, and results in reliable conclusions.

1.    **Reasonableness of FCA's Instructions and Warnings**

Plaintiffs first move to exclude Dr. Dorris from testifying about the reasonableness of the instructions and warnings given by FCA regarding accessing the spare tire and jacking the Grand Caravan up.  (Doc. 74-1, p. 4-7).  Notably, Plaintiffs do not contest that Dr. Dorris is qualified to offer such an opinion.  (Id., generally).  Instead, Plaintiffs claim to be concerned that "expert cannot or [sic] offer factual conclusion that interfere with or attempt to substitute for the trial court's fact finding function."  (Id., p. 4).  This position is not consistent with the applicable law.  The Federal Civil Pattern Jury Instruction is illustrative on this point:

> When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.
>
> But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

Pattern Civ. Jury Instr., 11th Cir., 3.6.1 Expert Witnesses (2019).

i.        **Dr. Dorris' reasonableness opinion is not a legal conclusion.**

The primary gist of Plaintiffs' argument in support of exclusion is that "experts may not offer legal conclusions." (Doc. 74-1, p. 4). It is important to clarify that courts will limit experts for providing a legal conclusion when the opinion offered is a "pure question of law." See Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013). See also Dudash v. S.-Owners Ins. Co., No. 8:16-CV-290-T-27AEP, 2017 WL 1969671, at *2 (M.D. Fla. 2017) (the mere reference to a term with legal significance in an expert opinion does not necessarily transform the opinion into an inadmissible legal conclusion) (citing Camacho v. Nationwide Mut. Ins. Co., 13 F. Supp. 3d 1343, 1367 (N.D. Ga. 2014)). Plaintiffs challenge Dr. Dorris' ability to give the opinion that "[f]rom a human factors perspective, the warning system associated with the subject 2006 Dodge Grand Caravan is reasonable and appropriate in terms of methods of dissemination, presentation, and content." (Dorris Report, p. 11). ***This is not a "pure question of law", as this is precisely what manufacturers pay Dr. Dorris to provide outside the context of litigation.***

Instead, Dr. Dorris' opinion regarding the reasonableness of the warnings given by FCA is an opinion of fact. "An expert does not invade the court's authority … where the opinion is focused on a specific *question of fact*." Camacho, 13 F. Supp. 3d at 1366 (emphasis added). Namely, it is a long-standing rule in Georgia that "[w]hether or not a product is defective is a question of fact". See Georgia Suggested Pattern Jury Instructions – Civil, 62.610 Strict Liability in Tort; General Explanation and Burden of Proof (2020). More specifically, the "adequacy [of a warning] is a question of fact for the jury." J. Kennard Neal & Catherine Payne, Ga. Products Liability Law § 8:8 (4th ed. 2021) (citing White v. W.G.M. Safety Corp., 707 F. Supp. 544, 549 (S.D. Ga. 1988)). Dr. Dorris' reasonableness opinion addresses whether the warnings and instructions provided by

FCA are defective, which is a question of fact the jury must decide if this case proceeds to trial (i.e., if FCA's Motion for Summary Judgment is not granted).

### ii.       Dr. Dorris is allowed to opine on the ultimate issue.

Instead, Dr. Dorris' opinion is one that goes toward an ultimate issue for determination in this case, which is admissible.  Specifically, the Federal Rules of Evidence *expressly allow* for experts to opine on the ultimate issue(s).  See Fed. R. Evid. 704(a) ("testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.").  For example, a defense expert in a products liability action was permitted to offer *all* of the following opinions (among others):

- that the defendant "adequately warned about potential risks" associated with the use of the product;

- that the defendant's warnings that the potential use of the product could result in death were not "defective or *unreasonably* dangerous";

- that the defendant "made a *reasonable* and adequate continuing effort" to ensure that its warnings were adequate; and

- that there was "no *reasonable* modification of the warnings provided by [the defendant] that would have resulted in a better outcome".

Mann v. Taser Int'l, Inc., No. 4:05-CV-0273-HLM, 2008 WL 11424000, at *3 (N.D. Ga. 2008) (emphases added).  Additionally, a defense expert in a hybrid premises liability/products liability case was allowed to testify "that Defendant's conduct was *reasonable* and prudent in light of the industry standards".  O'Brien v. NCL (Bahamas) Ltd., No. 16-23284-CIV, 2017 WL 10410455, at *9 (S.D. Fla. 2017) (emphasis added).  See also K.W.P. v. Kansas City Public Schools, 296 F. Supp. 3d 1121, 1127 (W.D. Mo. 2017) (expert's opinion in § 1983 action alleging police

misconduct that handcuffing of seven-year-old student was unnecessary and against general law enforcement and custodial standards was helpful and did not impermissibly tell jury what verdict to reach, because expert did not frame the term "reasonable" in traditional legal context and district court instructed expert not to do so during his testimony at trial); Camacho, 13 F. Supp. 3d at 1367 (N.D. Ga. 2014) (expert in bad faith failure to settle case permitted to offer opinion testimony regarding the reasonableness of the insurance company's rejection of a settlement demand in accordance with insurance standards and practices); Tindall v. H & S Homes, LLC, No. 5:10-CV-044 CAR, 2012 WL 3242128, at *9 (M.D. Ga. 2012) (defense expert in fraud case permitted to testify that defendant's actions were "reasonable").

Here, Dr. Dorris' opinion is that "the warning system associated with the subject 2006 Dodge Grand Caravan is reasonable and appropriate in terms of methods of dissemination, presentation, and content." (Dorris Report, p. 11). He then breaks down each of these three aspects in which the warnings are reasonable (methods of dissemination, presentation, and content) in his Report, and provides thorough explanations for each. (Id., p. 11-21). For example, under methods of dissemination, Dr. Dorris notes "it is an accepted practice to refer readers of on-product warnings to the associated manual", and further, "Research suggests that many consumers not only expect product manuals to contain safety information, but they prefer safety messages to be communicated in this medium over on-product labels (Mehlenbacher et al., 2002)." (Id., p. 11-12). Under his format and presentation section, Dr. Dorris notes, among numerous other things, that "embedding safety information [is] an accepted practice in safety communications" and "the owner's manual employs accepted formatting and technical writing conventions, such as layout … and structure". (Id., p.13). Dr. Dorris' discussion of the content of the warnings provided by FCA spans *nine pages* in this Report. (Id., p. 13-21). Plaintiffs also extensively questioned Dr. Dorris

about the reasonableness of FCA's warnings during his nearly six-hour deposition.  (Dorris Dep.,

generally).

      As such, this is undoubtedly not a case in which Dr. Dorris simply tells the jury what it

should conclude about the ultimate issue of the reasonableness of the warnings given by FCA

without offering any authoritative support or factual explanation.  In fact, the exact opposite is

true, as explained above.  Therefore, Plaintiffs' Motion to exclude this opinion should be denied.

      **iii.**    **Plaintiffs' own experts offer opinions regarding reasonableness and foreseeability.**

      Plaintiffs' argument that Dr. Dorris' reasonableness opinion is a legal conclusion that must

be excluded is belied by many of the opinions offered by their own experts.  Lila Laux, one of

Plaintiffs' three purported warnings experts, gave an opinion as to what is "foreseeable" to FCA

in her Report:

> It is ***foreseeable*** that a user with four inflated tires on the vehicle
> will not understand that even with those inflated tires holding the
> vehicle up, the exhaust system provides so little clearance that it
> could trap and injure you (this is a latent hazard). When the vehicle
> has all four inflated tires, it is ***foreseeable*** that a user will believe
> they can safely reach in under the vehicle, with part of their body
> under the vehicle, and grab the tire even if it is jacked up.

(Laux Report, p.3-4) (emphases added).  Under Georgia law, "[w]hether a duty to warn exists thus

depends upon ***foreseeability*** of the use in question, the type of danger involved, and the

***foreseeability*** of the user's knowledge of the danger.  Wabash Metal Prod., Inc. v. AT Plastics

Corp., 258 Ga. App. 884, 886–87 (2002) (emphases added).  If Plaintiffs' argument regarding Dr.

Dorris is to be accepted, then it must also apply to their own expert's "foreseeability" opinion.

      Likewise, Plaintiffs' expert Jerry Householder provided the following opinions at his

deposition:

- it is a "reasonable interpretation" of the illustration in the owner's manual depicting the jack-head that the hinge point is supposed to line up directly below the sill flange (Householder Dep., 204:20-21, 208:1-2);

  - "it [is] reasonable to believe that the sill flange has got to be directly above the hinge point" (Id., 205:21-23);

- it is "reasonable" to think the spare tire hook depicted in the owner's manual pulling out the spare tire is instead depicting the jack handle (Id., 233:14);

  - "the user's interpretation does not need to be the only interpretation, it doesn't need to be the best interpretation. It only needs to be a reasonable interpretation. And it's going to be my testimony that that was a reasonable interpretation." (Id., 233:22-234:1);

  - "But I think the ordinary person would look at that and say, well, that's reasonable." (Id., 239:3-4).

Indeed, Dr. Householder used the word "reasonable" 17 times throughout the course of his deposition. (Householder Dep., generally). If Plaintiffs distinction is adopted, then all of Dr. Householder's numerous and frequent references to what he thinks is reasonable should be excluded, as well.

Design experts routinely testify as to whether a product was "defective"- which, under Plaintiffs' interpretation of the phrase, is a legal conclusion. This is no different, and unless Plaintiffs believe that *none* of the experts for either party are permitted to opine whether the manufacture, design, or warnings in the subject Grand Caravan were defective, then Dr. Dorris should be able to testify that these warnings are reasonable and not defective.

iv.     **Dr. Dorris was not "previously excluded on this same issue".**

Finally, Plaintiffs claim that "Dr. Dorris was previously excluded *on this same issue* by the Court in <u>Am. Family Mut. Ins. Co. v. Techtronic Indus. N. Am.</u> …" (Doc. 74-1, p. 7) (emphasis added). ***This is incorrect and a material misrepresentation to this Court***. In <u>Techtronic</u>, the plaintiffs and the defendant *both* disclosed experts to provide warnings opinions and *both* parties moved to exclude/strike the opposing party's expert. <u>See</u> No. 12-2609-KHV, 2014 WL 2196416, at *1 (D. Kan. 2014). The District Court first granted the defendant's motion excluding the plaintiffs' warnings expert, finding that his "proposed testimony *will not aid the jury* in determining the facts and understanding the evidence in this case" because the warnings at issue "were written for average consumers, i.e. individuals similar to those who will sit on the jury." <u>Id.</u> at*3 (emphasis added). "Thus, the jurors will be fully capable to assess plaintiffs' claims" regarding the warnings without the assistance of expert testimony. <u>Id.</u> Then, *applying the exact same logic*, the Court excluded Dr. Dorris from testifying, as well. <u>Id.</u>

Notably, though, the Court did not rule Dr. Dorris was barred from opining about the "reasonableness" of a warning, as Plaintiffs have represented. Instead, the Court ruled wholesale that warnings opinions would not assist the trier of fact in that case (with different facts and allegations about the warnings than in this case), and thus excluded both parties' warnings experts in their entirety. Thus, if Plaintiffs are asking the Court to follow the Kansas District Court's opinion in <u>Techtronic</u>, they would be moving for exclusion of the warnings opinions offered by their own experts Lila Laux, Jerry Householder, and Pete Sullivan, as well.

### 2.     <u>Obvious Nature of the Hazard</u>

Plaintiffs also move to exclude Dr. Dorris from opining that the hazard at issue in this case – a vehicle falling off a scissor jack – is an obvious one. (Doc. 74-1, p. 7-8).

A critical part of the engineering field of human factors is to consider the nature of the hazard and determine whether a warning is needed, or what information should be communicated. See Frantz, J.P., Rhoades, T.P., Young, S.L. & Schiller, J.A. (1999), Potential problems associated with overusing warnings, Proceedings of the 7th International Conference on Product Safety Research, 274-279 (Dorris Report, p. 8, 32).

Opinion testimony from a human factors expert is appropriate where "a question of fact exists as to whether the [conditions] were, in fact, obvious dangers."  See Bryant v. BGHA, Inc., 9 F. Supp. 3d 1374, 1396 (M.D. Ga. 2014).  Unless Plaintiffs agree with Dr. Dorris and admit in their Response to FCA's Motion for Summary Judgment that the danger of the Grand Caravan falling off the jack was an obvious one, then the obviousness of the danger is in dispute in this case.  As such, opinion testimony from human factors expert Dr. Dorris in that regard should be allowed (if needed at trial).

Moreover, determining what hazards are obvious is an important question in the field of human factors.  Not every hazard can be warned about due to the negative consequence of "information overload."   As stated in his Report, "the National Highway Traffic Safety Administration has recognized the need to avoid what it refers to as 'information overload' in developing automotive warning regulations."  (Dorris Report, p. 8).  This concern is discussed in numerous peer reviewed human factors publications.  (Id., p. 8, 10) (Dorris, A.L. & Dorris, N.T. (2001a), Mandatory air bag warnings: A human factors analysis of their development, Society of Automotive Engineering Technical Paper 2001-010046; Dorris, A.L. & Dorris, N.T. (2001b), Supporting the warning designer: An automotive case study, Proceedings of the Human Factors and Ergonomics Society 45th Annual Meeting, 865-869; Frantz, J.P., Rhoades, T.P., Young, S.L. & Schiller, J.A. (1999), Potential problems associated with overusing warnings, Proceedings of

the 7th International Conference on Product Safety Research, 274-279).  In order to determine whether a warning is needed, an experienced and trained expert therefore *must* consider the obviousness of the hazard.

It is unclear why Plaintiffs' try to run from the obviousness of the hazard of a vehicle falling off a jack.  It has been recognized by their own clients.  (Dorris Report, p. 9-10) (wherein Dr. Dorris identified and quoted testimony from the members of the Richardson family about their recognition of the specific danger of a vehicle falling off a jack onto someone underneath).  Further, the forces of gravity and falling have long been viewed by Georgia courts as obvious dangers, even to children.  "No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct…"  Riley v. Brasunas, 210 Ga. App. 865, 867 (1993) (quoting Augusta Amusements v. Powell, 93 Ga. App. 752, 757 (1956)).  "Gravity, unlike traffic on a quiet street or driveway, is always present …"  Kane v. Landscape Structures, Inc., 309 Ga. App. 14, 20 (2011).

Regardless, it is fair and appropriate for Dr. Dorris to opine about this issue.  Plaintiffs' Motion should be denied.

### 3.   Different Warning Would Not Have Changed the Outcome

Finally, Plaintiffs move to exclude Dr. Dorris from testifying that "there is insufficient evidence" showing that if FCA had given a different or additional warning, it would have altered anyone's behavior and changed the outcome.  (Doc. 74-1, p. 8-9).

Causation is an essential element of any warnings claim.  See Gaddy v. Terex Corp., No, 1:14-cv-1928-WSD, 2017 WL 1493615, at *8 (N.D. Ga. 2017) (granting summary judgment to defendant because "there is no evidence to show causation, a necessary element of Plaintiff's failure to warn claims."); Mascarenas v. Cooper Tire & Rubber Co., 643 F. Supp. 2d 1363, 1375

(S.D. Ga. 2009) ("In a negligent failure to warn case, a plaintiff must show proximate cause."); Powell v. Harsco Corp., 209 Ga. App. 348, 349-350 (1993) ("Whether proceeding under a strict liability or a negligence theory, proximate cause is a necessary element of a failure to warn claim.").

Whether a plaintiff followed other warnings is relevant because it is evidence of whether they would have followed an alternative warning.  See Dozier Crane & Mach., Inc. v. Gibson, 284 Ga. App. 496, 500 (2007) ("Generally, where there is no evidence that a plaintiff read the allegedly inadequate warning, causation cannot be shown."); Thornton v. E.I. Du Pont De Nemours & Co., 22 F.3d 284, 290 (11th Cir. 1994) (summary judgment warranted on warnings claims where the plaintiff "used [a similar product] two or three times previously and had never read the label").

Dr. Dorris has valid evidence for this opinion.  In four pages of his report, Dr. Dorris points to specific evidence that a different warning would not have made a difference:

1.  Dr. Dorris cites peer reviewed literature shows that prior benign experience decreases hazard perception while increasing optimistic bias.  Mrs. Richardson testified that "Seanesee had prior benign experience by participating in changing tires on the subject vehicle on two other occasions without injury or concern before this incident (K. Richardson, pg. 42-48; and P. Richardson, pg. 36-62)" (Dorris Report, p. 22);

2.  Dr. Dorris noted that there is considerable evidence that Seanesee was not following multiple other warnings and instructions in the Owner's Manual, which shows that any other warnings would likely be ignored:

Based upon the available evidence, there appears to be several actions occurring during this incident that are inconsistent with the *Jacking and Tire Changing* procedures in the owner's manual and would suggest there was not an attempt to strictly follow that information. For example, to the extent:

- the vehicle was not on a firm level surface (see emergency responders G. Yeomans, pg. 23-26; B. Singletary, pg. 16-17)

  <u>violates</u>: "park the vehicle on firm level surface" (pg. 376; similar in warning label);

- the wheel was not chocked (see K. Richardson, pg. 128-30)

  <u>violates</u>: "block both the front and rear of the wheel diagonally opposite the jacking position" (pg. 377; similar in warning label);

- it is alleged the lugs nuts were removed prior to raising the vehicle (see Householder deposition, pg. 133-35)

  <u>violates</u>: "loosen (but do not remove) the wheel lug nuts" (pg. 379);

- it is alleged the vehicle was raised in the "knife's edge" scenario (see Householder report, pg. 2-3)

  <u>violates</u>: illustration and instructions, such as: "The jack is to be located, engaging the flange, between the pair of tabs closest to the wheel to be changed" and "**Do not raise the vehicle until you are sure the jack is securely engaged**" (emphasis in original, pg. 383-84);

- Seanesee was underneath the raised vehicle (see K. Richardson, pg. 56-57, 66, 175)

  <u>violates</u>: Warnings about "never get any part of your body under a raised vehicle that is on a jack" (pg. 376, 381; similar in warning label);

- Kimberly Richardson was inside the vehicle turning the winch with the vehicle raised and her son under the vehicle (see Householder video, Cam1V2 ~08:15, K. Richardson agrees that "when he's under there, he says 'keep cranking it down, mom'")

<u>violates</u>: "passengers should not remain in the vehicle when the vehicle is being jacked" (pg. 377); and Step 2 - rotating the drive nut "until the winch mechanism stops turning freely" before Step 3 retrieving the spare (pg. 380);

- Seanesee was attempting to retrieve the spare tire/cover assembly without the Spare Tire Hook,

  <u>violates</u>: Step 3 - "Assemble the winch handle extensions to form the Spare Tire Hook and pull the compact spare tire/cover assembly from under the vehicle" (pg. 380);

- Seanesee was attempting to release the spare tire assembly from the winch cable (i.e., remove the wheel spacer or "wingnut") while under the van (see Householder video, Cam1V2 ~08:15, and her deposition, pg. 147-9)

  <u>violates</u>: Step 3 - "Assemble the winch handle extensions to form the Spare Tire Hook and pull the compact spare tire/cover assembly from under the vehicle" (pg. 380); and Step 4 - "when the compact spare tire/cover assembly is clear of the vehicle, stand the wheel upright and remove the wheel spacer by squeezing the two retaining tabs together" (pg. 382).

(Dorris Report, p. 25-26). Dr. Dorris also makes the important point that there is an absence of evidence contrary to the above. (Id., p. 28). There is no evidence (including none from Plaintiffs' experts) that a different warning would have made a difference.

Under Georgia law, it is imminently relevant whether there exists sufficient evidence showing that Seanesee would have heeded a different or additional warning. The absence of evidence that Seanesee read other warnings in the past or read the warnings in question at the time of the incident goes directly toward the issue of causation, a necessary element of Plaintiffs' warnings claims. See Dozier Crane & Mach., Inc., 284 Ga. App. at 500; Thornton, 22 F.3d at 290. Dr. Dorris should be permitted to opine whether or not there is evidence suggesting that Seanesee would have heeded a different or additional warning. Plaintiff's Motion should be denied.

This 5th day of May, 2021.

**WATSON SPENCE LLP**

***/s/ Philip A. Henderson***
Michael R. Boorman
Georgia Bar No. 067798
Philip Henderson
Georgia Bar No. 604769
999 Peachtree Street, N.E.
Suite 1130
Atlanta, Georgia 30309
Telephone: (229) 436-1545
mboorman@watsonspence.com
phenderson@watsonspence.com

*Counsel for Defendants FCA US LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

> Christopher B. Newbern, Esq.
> Edward Piasta, Esq.
> PIASTA NEWBERN WALKER, LLC
> 3301 Windy Ridge Pkwy
> Suite 110
> Atlanta, Georgia 30339
> chris@pnwlaw.com
> edward@pnwlaw.com
> *Counsel for Plaintiffs*

> Caleb H. Didriksen, III, Esq.
> Carl A. "Trey" Woods, III, Esq.
> DIDRIKSEN, SAUCIER, WOODS & PICHON LAW FIRM
> 3114 Canal Street
> New Orleans, Louisiana 70119
> caleb@dswplaw.com
> trey@dswplaw.com
> *Counsel for Plaintiffs*

> J. Holder Smith, Jr., Esq.
> YOUNG, THAGARD, HOFFMAN, SMITH, LAWRENCE & SHENTON
> P.O. Box 3007
> Valdosta, Georgia 31604
> jaysmith@youngthagard.com
> *Counsel for Defendant Kimberly Richardson*

This 5th day of May, 2021.

*/s/ Philip A. Henderson*
Philip A. Henderson, Esq.
Georgia Bar No. 604769